This is Appeal No. 20-2444. Mr. Hillis, we'll begin with you. Thank you. May it please the Court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Joshua Reedy. He brings one claim on the appeal, and that is that the District Court erred when it determined that there was probable cause to arrest Mr. Reedy and keep him in custody while police were obtaining evidence that was then used as a search of the vehicle where police located the gun. So, a de facto arrest occurred when Sergeant Domes directed Officer Farley to detain my client, when police frisked him, and when multiple officers were present on the scene. All of those things indicated under Borastowski and Smith that my client was under arrest, he was not free to leave, and a reasonable person would have so concluded. The District Court said, though, that the search was proper, but this is where we part company with the District Court. And as much as I should say the government argues that there was no de facto arrest until later, I think that the description by the District Court at Record 40 Appendix page 73, which is page 10 of the opinion, delineates the events that occurred and then saying that there was a search. But, of course, a search is not itself indication of an arrest. The search is a separate legal matter, and the focus is on the events that led to the arrest. And if the arrest is illegal, that is, if it's not supported by probable cause, etc., then that is a problem in and of itself. The search is invalid. Mr. Hillis, can I ask you a question here? Upon encountering your client, I think at 8 or 8.30 in the morning behind a closed business, wearing a bulletproof vest in a car that was not his own, upon questioning him and having your client state that the driver of the car had wandered off, a crowbar, a two-way radio, a knife, what were the police officers permitted to do under the law when they encountered your client? Detain him for a reasonable period of time under Terry in order to determine if there was probable cause, and if there wasn't, to release him within a reasonable period of time. They could not hold him. Why was this not, why wasn't it a reasonable period of time in this case? Because under the Lopez case, I think that was the analysis that the district court relied on. It spoke particularly of the duration. And so the duration here is one indicia of the arrest. And my client was in the custody of the police for about half an hour, it seems, before they ambled off to look for Mr. Harding, who was then found later in a yard. And that's all the information that they really had to rely on later to establish probable cause to search the vehicle. Mr. Hillis, you bring up a good point there, and I want to expand on that. Because certainly 90 minutes is on the long end for a detention. Part of that determination for us may be how far away was Mr. Harding when he was located from the employee parking lot? Meaning, if this fellow is a couple blocks away, that's going to be different, potentially, in the analysis than if he's right next door. Does the record say? It doesn't, Your Honor. But if my client's cohort was in Afghanistan, they couldn't keep my client in custody for all the period of time that it was necessary to locate somebody somewhere else. So the accident of distance can't be used as a basis for lengthening the detention here. The problem was that at the 30-minute mark or so, the police didn't have what was necessary, and yet they were there in force. They had frisked him. He was under de facto arrest at that moment. They developed facts later on. But I would take issue even with those facts, Judge Brennan, because for a person to be guilty of this possession of burglary tools, possession of tools of burglarious intent, and that's really what's driving this. Because finding a user quantity of math on somebody doesn't allow you then to search everybody in proximity or somebody associated with them, vehicles, houses, etc. It just doesn't have that sort of reach. But burglarious tools are defined as instrumentalities intended and designed to break into some place, and a person then must have the intent to use those items in that fashion. Here we've got a folding knife, a crowbar, a radio, a two-way radio. Even if everybody has those things, those things are not designed to commit the offense. That raises an interesting question. Why was there not probable cause to make an arrest for possession of burglarous tools right when they encountered your client and had the conversation with him, and he said the driver of the car just walked off? He doesn't know where he went. I mean, presumably your client doesn't know why he's parked behind a closed business. The facts here are a little weird. I think you'd agree with me, wouldn't you? Well, I would, but I'd also note that it's the government's burden, and they didn't argue that there was probable cause then, and there was no finding by the district court that there was. But we can affirm on that ground, can't we? If there was a lawful basis to do so, Judge, but aren't we now glorifying the presence of commonly possessed items like a crowbar, a radio, a folding knife, and we're now importing on those some sort of nefarious intent. Anytime somebody has commonly possessed items, that they are now guilty of this offense in Wisconsin, there's probable cause to search them. I don't think we want to cast the net that broadly if we have any regard for people's liberties. But can't they take into account in that analysis what your client told them when he was questioned? It wasn't as if he said, I've got a crowbar for these reasons, and I've got a walkie-talkie for these reasons. He basically said, I don't know why I'm here, and the driver of the car just wandered off. Right, and so where's the crime in that? Where's the probable cause in that? If they wanted a more fulsome explanation, they could have asked, that was their ability under Terry. And if they didn't develop a better record... Mr. Hillis, is your client's criminal record and the police's awareness of his criminal record a relevant or irrelevant factor in the question Judge Kirsch asked? Well, there's a totality of the circumstances. To the extent that they knew of certain things, that has to be factored in, Judge. I would agree with that for sure. But there's nothing still informative when you add those things into the mix that shows just because a person committed an offense once upon a time, that that person's possession of commonly held items would be a basis to say that these are now criminal acts. No, that's fair. That's totally fair. Don't you think the fairest inference, though, when you factor in your client's criminal background, when the police approach the car, is either one of two things. Someone's breaking in a store, in the back door of one of these stores, or there's a home invasion going on. I wouldn't say necessarily, Judge, because a person in a vehicle as a passenger, I don't think that you can infer when you see a crowbar in there or a folding knife, which again are common items used for lots of things. Don't leave out the walkie-talkie. You've got to include the walkie-talkie. Right. And again, there was no argument that those things at that time established probable cause. So I would have a different argument and different earth to plow if that was the contention. But the district court didn't seem willing to bite on that. As a matter of fact, the government wasn't prepared to make that argument then. So it would seem to me to be a pretty aggressive approach now for the court on appeal to try to affirm on that basis. We are in an adversary system after all. If the court wants to, I would hope, give respect to that. We would not encourage developing arguments that are not things that a party tried to adopt in fashion below, such that now on appeal, it's kind of tricky to deal with this through the questions at present. But with that, I'd like to help me out on one. That's fair, Mr. Hillis. I mean, that's a fair argument. Help me out on one aspect of your position that seems in tension with itself. And maybe it's not. And that is your point that when he was ordered out of the car and Sergeant, what's his name? Dean or Dome or something said, stay there. Hold him. That seems to be, as you articulated this morning, the point of arrest in your view. OK, but yet you're also talking in the next breath about the duration of the temporary detention allowed by Terry. So which which is it? Is it is it? Go ahead. Yeah, go ahead. You get the question. Sure. No, that's a very fair point. To me, they're different things. We've now decided that there is an arrest based on what the facts that are present under Smith Lopez cases of that type. If they said it was just a Terry stop at that point, they were able to establish that. Then we would be in some territory where there is a there's another period of time that has to be a reasonable amount of time for them to conduct what is necessary under Terry. But he was, in fact, arrested is our point, Judge. And so, sure, he's arrested. He's a he's a I'm using it colloquially. OK, he's arrested in the sense that there's no way he's going anywhere. OK, no question about that. But but I think I thought your argument, at least I interpreted it as to be, well, he's not going anywhere. He's being held to allow the kind of Terry inquiry to play out. Right. So they could under normal circumstances do that. But I'm saying that because here the facts demonstrated an arrest, we don't have then the ability to permit officers to take an additional period of time under Terry once an arrest occurs because we are in different territory. Now, if there's an arrest, then we are stopping the clock. We're not allowing officers to say I needed additional information to determine whether or not there was an offense, et cetera, that caused me to make additional inquiries, gather more facts. So you're saying once the arrest happens, the terror, the the Terry time is up. There isn't any. That's right. I got it. That's right. Thank you, Mr. Hillis. Ms. Krause will move to you on behalf of the government. Thank you, your honors. And good morning again. Taylor Krause appears for the government. I want to pick right back up with what one of your honors just mentioned, that being the Terry time. In this particular case, the magistrate judge found and the district court adopted that the officers were allowed based on reasonable suspicion to detain Mr. Reedy following the frisk in the parking lot so that they could either confirm or dispel his story. The magistrate judge found, as a matter of fact, that this detention, that is the detention between the frisk and the time they located Harding nearby was 20 to 40 minutes. This is reasonable and should be distinguished from Lopez and Smith because of primarily the length of detention here. The district court is the record. Why is the record so unclear? 20, 20 to 40 minutes in a case like this seems like, well, it's somewhere between night and day. I mean, why? Why in a case like this with Mr. Reedy serving this time and all this, why are we guessing at 20 to 40 minutes? Your Honor, it is unclear first because we had multiple officers responding here. I believe the record demonstrates for and based on the computer aided dispatch that was submitted at the motion hearing. It was unclear at what point officers found Harding. It was clear that after about 20 minutes, the other officers were on scene and at some point had found Harding. But it was unclear upon finding Harding the exact order in which they did things. But I think what's important here is whether it's 20 minutes or 40 minutes under the circumstances, it was reasonable because officers acted diligently. They immediately. Mr. Hillis, his position gets a lot stronger, doesn't it? As once you're at the 40 minute mark. Your Honor, I don't think we can apply a hard and fast rule with the 40 minute mark. When we look at the things the officers accomplished here to answer a question that was posed early by one of your honors with regard to how close Mr. Harding was located. He was found nearby. Although this is not contained in the record, he was nearby. And essentially, the officers would have been able to see him. That's the part of this appeal that I don't like, and it's unsettling there nearby. Well, it could have been 20 to 40 minutes. I mean, there's quite a bit at stake for Mr. What the timeline is, what the location is. Everybody's capable of putting a map in or telling us where the goodwill is vis-a-vis this. This fellow's backyard that Harding is found in, et cetera, et cetera. It seems quite unfortunate that we're guessing at this. Your Honor, I understand your concerns, but I think when we take a step back from that issue and again, look at the totality of the circumstances. And what occurred after that 20 to 40 minutes? What happened was that officers had probable cause to then arrest Mr. Reedy, whether he was arrested under a de facto arrest or explicitly. And that's what the district court found. Ms. Cross, can I ask you a question? The 40 minutes at the end of the 40 minutes, the 40 minutes has expired the outer time limit. At that point, had they searched the backpack and found the methamphetamine? Or had they only located Mr. Harding? Your Honor, what the district court adopted from the magistrate judge was at the end of that 40 minutes, they had found Mr. Harding, searched him immediately, talked to him immediately and found his backpack that contained the additional items. Latex gloves, bolt cutters, ammunition, knives, and then also determined that the person who owned this backyard where he was found had no idea that he was there. Had not hired him for landscaping as he indicated. So at that outer limit, yes. So did the time period, was the time period in which it took the officers to find Mr. Harding? Let's say we concluded that was reasonable, that time period in which they looked, searched for Harding. Was it reasonable to continue under the facts to continue to detain Reedy while they interviewed and searched Harding? Under the facts of this case? Yes, Your Honor, it was. Because at that point, they had found his accomplice who he claimed would be there. And his accomplice said, I don't know who that is. I don't know Reedy. I don't know anything about the parking lot. And they find additional burglarious tools as well as a walkie-talkie that connects the gentleman. So is it your position that we have to consider this the reasonable time in which it took to find Harding? And then there was an intervening event that extended the reasonable period of time in which to hold Reedy before they actually arrested him? That is correct, Your Honor. And the government's argument is that even if a de facto arrest occurred at the time they find Harding, gather the additional information, probable cause existed for an arrest at that point. So yes, that is the government's position. And so beyond the position that this was a reasonable detention, then followed by an event, an intervening event that created grounds for additional detention and probable cause for arrest, this court may also affirm under the alternative exception of the automobile grounds, I don't want to spend too much time on that other than to say the government asserts it did not waive this argument below and that it did include pages of briefing to the magistrate judge as well as to the district court judge. And although the government did not explicitly refer to this as the automobile exception, it certainly cited that project case law on that issue and provided that analysis. So again, Your Honors, I think the defendant's name… How do we get to the automobile exception if Mr. Hillis is right? There's no probable cause to arrest him in the first place. That would mean that Mr. Reedy could have got back in the car and said, I'll see you folks later. That's true, Your Honor. However, the record demonstrates that that car wasn't going to go anywhere. The officers had already determined before finding Harding that it was inoperable. No one had a valid driver's license. It had expired registration. And so even if Mr. Reedy were to take off on foot, that car was still going to be searched based on the arrest of Harding and Harding's statements as well as the suspected methamphetamine. So independent of Mr. Reedy, that car was going to stay there and be searched. So that is why the automobile exception is an alternative ground, even if Mr. Hillis were successful in asserting that Reedy was de facto or under de facto arrest at the time of the frisk. Further, Your Honor, the record does support a finding that probable cause existed to arrest Mr. Reedy at the first instance. However, I think it's more important in this particular case to really look at the timeline here and the district court's analysis that after accepting the Terry stop analysis by the magistrate judge, that then it moved on to finding probable cause for an arrest that was triggered by the evidence located by Mr. Harding. Your Honors, if you don't have any further questions, the government would rest on its arguments presented here as well as in its brief and ask that you affirm the district court's denial of the motion to suppress. Again, on the grounds that the continued detention was reasonable, probable cause existed at the time Harding was arrested or the arrest of Mr. Reedy, and in the alternative that the automobile exception applies. Thank you, Ms. Krauss. Mr. Hillis, we'll give you a minute for rebuttal. Appreciate it. So I'd like to say two quick things. First, about the automobile exception, the fact that my client doesn't have a driver's license doesn't mean that somebody else couldn't drive the car away. And the vehicle had to be operable. Somebody drove it there in the first place. It didn't roll there. Another problem is so far as the government wants to say, or maybe more specifically in regard to your question, Judge Scudder, about the burglarious intent. If one person, Mr. Harding, has items in his possession and it's all the indicia that stuff is afoot, then that translates to burglarious intent. And with the items that he had there, maybe they qualify as the right type of tool. But how do we transport that to where somebody else is in the car or some other place, and we say that he is doing what with those tools? He's not participating in the burglary somewhere else, even the radio. He's not able to spot anybody or do anything on this record. He's just a guy sitting in a car with a couple of things that look a little fishy, but I don't think they satisfy what is necessary to be shown for possession of tools with burglarious intent under Wisconsin law. So without a drug case and without that, what do we have to search the vehicle? I don't think anything. Thank you, Mr. Hillis. Thank you, Ms. Krause. The case will be taken under advisement.